UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

ANTHONY MULCAHY,

    Plaintiff,

v.

WALT PESTERFIELD,
SERGEANT OLDES and
DR. BARNES,

    Defendants.

Civil Action No. 23-3530-TDC

**MEMORANDUM OPINION**

Self-represented Plaintiff Anthony Mulcahy, who was previously confined at the Baltimore County Detention Center ("BCDC") in Towson, Maryland and has since been released, has filed this civil rights action pursuant to 42 U.S.C. § 1983 alleging that Defendants BCDC Director Walt Pesterfield, Sergeant Oldes, and Dr. Zowie Barnes violated his constitutional rights based on a failure to provide timely medical care when he contracted an illness from bacteria in the drinking water. Director Pesterfield and Sergeant Oldes ("the County Defendants") have filed a Motion to Dismiss, and Dr. Barnes has filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. Although Mulcahy was informed by the Court of his right to file a memorandum in opposition to each Motion, he has not done so. Upon review of the submitted materials, the Court finds that no hearing is necessary. *See* D. Md. Local R. 105.6. For reasons set forth below, the County Defendants' Motion will be GRANTED IN PART and DENIED IN PART, and Dr. Barnes's Motion will be GRANTED.

## BACKGROUND

In the presently operative Amended Complaint, Mulcahy alleges that while incarcerated at BCDC, he was placed in restrictive housing on Tier 3F from September 6, 2023 through October 25, 2023, when he was moved to Tier 4E. He alleges that in both housing locations, the drinking water contained H. pylori, a kind of bacteria that can in some instances cause stomach cancer. On November 1, 2023, Mulcahy began throwing up and having diarrhea. On November 2, 2023, he submitted a sick call request but did not receive a response. He then asked Sergeant Oldes to contact PrimeCare, the contract medical provider at BCDC, but Sergeant Oldes just told him to put in a sick call request, which Mulcahy had already done.

Mulcahy then heard that the water contained H. pylori. On November 8, 2023, Mulcahy gave Sergeant Oldes a written grievance form which complained of bacteria in the water and his failure to receive a response to his sick call request. He received no response.

Almost a month later, on December 3, 3023, Mulcahy was moved to Tier 3V and was called to the medical unit a few days later. After his blood was drawn, he was informed that he had tested positive for H. pylori. When he asked why it had taken so long to be seen by a medical care provider, he was told by medical personnel that they were "backed up." Am. Compl. at 5, ECF No. 7. Mulcahy asserts that he was given antibiotics to treat the H. pylori "over a month" late. *Id.* Mulcahy alleges that his grievance form should have gone up the chain to Director Pesterfield, but that it "never happened." *Id.* Mulcahy seeks monetary damages for the delay in medical treatment and an order directing BCDC to "fix" the water. *Id.* at 6.

In a declaration submitted with her Motion, Dr. Barnes, a physician who has worked at BCDC as the on-site Medical Director for PrimeCare, states that she provided medical care to Mulcahy but did not "exclusively" render treatment to Mulcahy. Barnes Aff. ¶ 5, Barnes Mot.

2

Ex. 5, ECF No. 15-7. She also asserts that she has never prevented Mulcahy from accessing health services or failed to treat his symptoms. *Id.* ¶ 6. Medical records submitted by Dr. Barnes show that on November 3, 2023, Mulcahy refused a chronic care neurology appointment with a physician's assistant, for which Dr. Barnes was scheduled to review the results. On November 3, 2023, Mulcahy requested a vegetarian diet "for better digestion," and on November 8, 2023, he had an appointment related to that issue at which he was told that the medical unit does not handle such issues. Med. Records at 15, 34, Barnes Mot. Ex. 4, ECF No. 15-6.

In a sick call request dated December 6, 2023, Mulcahy requested treatment for diarrhea and throwing up and requested testing for "HPN" in the water. Med. Records at 4, Barnes Mot. Ex. 3, ECF No. 15-5. On December 10, 2023, Mulcahy was seen by a physician's assistant and complained of having diarrhea for the last two weeks. He was advised to stay hydrated, offered Gatorade powder, provided with medications, and had an x-ray ordered. On December 11, 2023, Mulcahy again submitted a sick call request because his stomach was hurting and he was throwing up. On December 12, 2023, an x-ray was taken which showed a non-obstructive bowel gas pattern. On December 13, 2023, Mulcahy had a blood specimen taken for testing. On December 14, 2023, Mulcahy was seen by physician's assistant, Roycott Mason, for follow up on the diarrhea and abdominal issues, which included blood in his stool and bloating that he reported had been going on for weeks. Mason prescribed medications and referred him for an abdominal ultrasound and blood work to include H. pylori testing. On December 19, 2023, Dr. Barnes authorized adding H. pylori to the blood test request. That day, the blood work results came back as positive for H. pylori. On December 20, 2023, Mulcahy was seen by a physician's assistant and was started on three antibiotics to treat H. pylori.

3

Construed liberally, the presently operative Amended Complaint alleges violations of the Eighth Amendment to the United States Constitution based on (1) a failure to provide safe drinking water for his use; and (2) an unreasonable delay in providing medical care when he contracted an illness from the water.

## DISCUSSION

## I. The County Defendants' Motion

Defendants Director Walt Pesterfield and Sergeant Oldes seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6). As grounds, they assert that Mulcahy has failed to allege sufficient facts to state plausible claims for relief against Director Pesterfield and Sergeant Oldes.

### A. Legal Standards

#### 1. Motion to Dismiss

To defeat a motion to dismiss under Rule 12(b)(6), the complaint must allege enough facts to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible when the facts pleaded allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions or conclusory statements do not suffice. *Id.* A court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. *Albright v. Oliver*, 510 U.S. 266, 268 (1994); *Lambeth v. Bd. of Comm'rs of Davidson Cnty.*, 407 F.3d 266, 268 (4th Cir. 2005). A self-represented party's complaint must be construed liberally. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). However, "liberal construction does not mean overlooking the pleading requirements under the Federal Rules of Civil Procedure." *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020).

4

### 2.    Eighth Amendment Claims

Mulcahy was a sentenced prisoner at the time the events alleged took place. *See* Maryland Judiciary Case Search, Case No. D-08-CR-23-014482 (Dist. Ct. for Baltimore Cnty.), *available at* https://casesearch.courts.state.md.us/casesearch. Accordingly, the Eighth Amendment applies to Mulcahy's claims for both unconstitutional conditions of confinement and an unreasonable delay in the provision of medical care.

As to a claim for unconstitutional conditions of confinement, the Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." *Iko v. Shreve*, 535 F.3d 225, 238 (4th Cir. 2008) (quoting *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996)). Conditions of confinement that "involve the wanton and unnecessary infliction of pain," or which "deprive inmates of the minimal civilized measure of life's necessities," may amount to cruel and unusual punishment. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). In order to establish an Eighth Amendment claim based on unconstitutional conditions of confinement, a plaintiff must prove two elements: that "'the deprivation of [a] basic human need was *objectively* sufficiently serious,' and that *subjectively* 'the officials act[ed] with a sufficiently culpable state of mind.'" *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (quoting *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993)).

The objective prong of a conditions-of-confinement claim requires the prisoner to "'produce evidence of a serious or significant physical or emotional injury resulting from the challenged conditions,' or demonstrate a substantial risk of such serious harm resulting from the prisoner's unwilling exposure to the challenged conditions." *Id.* (quoting *Strickler*, 989 F.2d at 1381). Thus, "a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year" violates the Eighth Amendment, even if "the complaining inmate shows no serious current symptoms." *Helling v. McKinney*, 509 U.S. 25, 33

(1993); *see Webb v. Deboo*, 423 F. App'x 299, 300 (4th Cir. 2011). For the subjective prong, to establish a sufficiently culpable state of mind, there must be evidence of deliberate indifference, in that a known excessive risk of harm to the inmate's health or safety was disregarded. *See Wilson v. Setter*, 501 U.S. 294, 302–03 (1991) (applying the deliberate indifference standard to conditions-of-confinement claims). "[T]he test is whether [correctional staff] know the plaintiff inmate faces a serious danger to his safety and they could avert the danger easily yet they fail to do so." *Brown v. N.C. Dep't of Corr.,* 612 F.3d 720, 723 (4th Cir. 2010) (quoting *Case v. Ahitow*, 301 F.3d 605, 607 (7th Cir. 2002)).

To state an Eighth Amendment claim for a failure to provide medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Such deliberate indifference requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff was aware of the need for medical attention but failed either to provide it or to ensure the needed care was available. *See Iko*, 535 F.3d at 241.

Objectively, the medical condition at issue must be serious. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). A medical condition is serious when it is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Iko*, 535 F.3d at 241 (citation omitted). As for the subjective component, "[a]n official is deliberately indifferent to an inmate's serious medical needs only when he or she subjectively 'knows of and disregards an excessive risk to inmate health or safety.'" *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "[I]t is not enough that an official *should* have known of a risk; he or she must have had actual subjective knowledge of both the inmate's serious

6

medical condition and the excessive risk posed by the official's action or inaction." *Id.* "[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference." *Id.* "Deliberate indifference is more than mere negligence, but less than acts or omissions done for the very purpose of causing harm or with knowledge that harm will result." *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016) (citations and alterations omitted).

## B. Director Pesterfield

Director Pesterfield contends that the claims against him should be dismissed because Mulcahy has failed to allege sufficient facts to state a claim against him. Although Director Pesterfield may be the official with overall responsibility for the operation of BCDC, liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation, or where the defendant otherwise condoned the violation. *Love-Lane v. Martin*, 355 F.3d 766, 782–83 (4th Cir. 2004). Absent personal participation, a supervisory official may be held liable upon a showing that: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens such as the plaintiff; (2) the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to, or tacit authorization of, the alleged offensive practice; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Here, Mulcahy has not alleged facts showing that Director Pesterfield had any personal role in the maintenance of water quality at BCDC, that he was actually aware of the problems with the water quality, or that he personally received either Mulcahy's sick call requests or his grievance form. Rather, Mulcahy provides only a single allegation referencing Director Pesterfield. Mulcahy states that the grievance form he submitted to Sergeant Oldes on November 8, 2023, which

7

included a complaint about the bacteria in the water and the failure to receive a response to his sick call request, "was supposed to go up the chain until it was given to Director Walt Pesterfield and it never happened." Am. Compl. at 5. Where Mulcahy does not claim that his grievance form ever reached Director Pesterfield, he has not alleged facts that would support the conclusion that Director Pesterfield either personally participated in the alleged constitutional violations relating to the water quality and the failure to provide timely medical care, or that he had the requisite knowledge of the relevant events to be subject to supervisory liability. Accordingly, the claims against Director Pesterfield will be dismissed.

### C. Sergeant Oldes

Sergeant Oldes also asserts that the claims against him should be dismissed because Mulcahy has failed to allege sufficient facts to support his claims. As discussed above, Mulcahy has alleged that on November 1, 2023, he began throwing up and having diarrhea, and that on November 2, 2023 he submitted a sick call request. When he did not receive a response, he asked Sergeant Oldes to contact the medical unit, but Sergeant Oldes responded by telling him to submit a sick call request, which he had already done. Standing alone, this encounter does not demonstrate that Sergeant Oldes was aware of any problem with the water quality or that Sergeant Oldes was aware that Mulcahy had an objectively serious medical condition requiring medical attention.

However, on November 8, 2023, Mulcahy submitted a written grievance form to Sergeant Oldes that, he alleges, complained of bacterial contamination in the water and of the failure to respond to his sick call request and provide medical care. Mulcahy received no response from this written grievance form and alleges that it was never submitted "up the chain" to BCDC

8

leadership. *Id*. No action was taken until after December 3, 2023, almost four weeks later, when Mulcahy was transferred to another unit and then finally taken to the medical unit.

Viewing the allegations in the light most favorable to Mulcahy, as is required at this stage, the Court finds that he has stated a valid Eighth Amendment claim against Sergeant Oldes. First, where Mulcahy has alleged that he became ill from contaminated water at BCDC, and that he submitted a written complaint about the bacteria in the water to Sergeant Oldes, but no action was taken in response, he has alleged facts supporting the conclusion that Sergeant Oldes was aware of an objectively unsafe condition of confinement that posed an excessive risk to inmate health and safety, and that he knowingly disregarded that risk.

Second, when these same facts are coupled with the facts that after suffering an illness as a result of the contaminated water, Mulcahy asked Sergeant Oldes to arrange for him to receive medical care, he later submitted to Sergeant Oldes a written complaint about bacterial contamination of the water and the failure to receive such care, he received no medical attention for almost four more weeks, and he was then diagnosed with having a bacterial infection from the water, Mulcahy has alleged sufficient facts to support the conclusion that Sergeant Oldes was aware that he had an objectively serious medical condition that created a substantial risk of serious harm, but he knowingly disregarded that risk by not acting to secure medical treatment for Mulcahy. Because Mulcahy has alleged sufficient facts to state a claim against Sergeant Oldes for Eighth Amendment violations, the County Defendants' Motion will be denied as to Sergeant Oldes.

## II.    **Dr. Barnes's Motion**

In her Motion, Dr. Barnes seeks dismissal pursuant to Rule 12(b)(6) or, in the alternative, summary judgment pursuant to Rule 56. As grounds, she asserts that (1) Mulcahy has failed to

allege sufficient facts to state valid claims against her; (2) Mulcahy's state law claims should be dismissed because he failed to comply with Maryland's Health Care Malpractice Claims Act, Md. Code Ann., Cts. & Jud. Proc. §§ 3–2A–01 to 3–2A–10 (LexisNexis 2020); and (3) the evidence does not establish that there is a genuine dispute of material fact on whether Dr. Barnes is liable.

With the Motion, Dr. Barnes has submitted Mulcahy's medical records and other exhibits accompanied by a Motion to Seal her motion, brief, and all of the exhibits. Because Mulcahy's medical records, ECF Nos. 15-5, 15-6, contain sensitive personal and medical information, the Court will seal those records but will deny the Motion to Seal as to the remaining records. The Clerk will be directed to unseal ECF Nos. 15, 15-1, 15-2, 15-3, 15-4, and 15-7.

## A.    Legal Standards

Typically, when deciding a motion to dismiss under 12(b)(6), the Court considers only the complaint and any attached documents. *Sec'y of State for Defence v. Trimble Navigation Ltd.*, 484 F.3d 700, 705 (4th Cir. 2007). Dr. Barnes has attached exhibits to her Motion consisting of Mulcahy's medical records and her own affidavit.

Rule 12(d) requires courts to treat a Rule 12(b)(6) motion as a motion for summary judgment where matters outside the pleadings are considered and not excluded. Fed. R. Civ. P. 12(d). Before converting a motion to dismiss to one for summary judgment, courts must give the nonmoving party "a reasonable opportunity to present all the material that is pertinent to the motion." *Id.* "Reasonable opportunity" has two requirements: (1) the nonmoving party must have some notice that the court is treating the Rule 12(b)(6) motion as a motion for summary judgment; and (2) the nonmoving party must be afforded "a reasonable opportunity for discovery" to obtain information essential to oppose the motion. *Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). Here, the notice requirement has been satisfied by the title of Dr. Barnes's Motion. To show that a

10

reasonable opportunity for discovery has not been afforded, the nonmoving party must file an affidavit or declaration under Rule 56(d), or another filing, explaining why "for specified reasons, it cannot present facts essential to justify its opposition." Fed. R. Civ. P. 56(d); *see Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244–45 (4th Cir. 2002). Mulcahy has not asserted that he needs additional discovery in order to address Barnes's Motion. The Court therefore may consider Barnes's argument that she is entitled to summary judgment.

## B.    Eighth Amendment

Dr. Barnes asserts that the Eighth Amendment claim of deliberate indifference to a serious medical need should be dismissed as to her because Mulcahy has failed to allege sufficient facts to state a plausible claim, and that the record does not create a genuine issue of material fact on whether Dr. Barnes is liable for such a violation. The same legal standards for such an Eighth Amendment claim described in relation to the County Defendants' Motion are applicable to Dr. Barnes's Motion. *See supra* part I.A.

Even before considering the submitted records, the Court finds that Mulcahy has failed to state a valid Eighth Amendment claim against Dr. Barnes. In the Amended Complaint, Mulcahy has listed Dr. Barnes as a defendant but has not alleged any facts relating to her. Mulcahy has not alleged that he met with Dr. Barnes at any point in relation to his illness from the water contamination, and he does not allege that she received either his sick call requests or his written grievance. *See Love-Lane*, 355 F.3d at 782–83 (stating that § 1983 liability generally requires awareness of the constitutional violation and personal participation in or the condoning of the violation). Although as the Medical Director, Dr. Barnes may have supervised other medical personnel who interacted with Mulcahy, the allegations are insufficient to support a finding of supervisory liability because Mulcahy has not alleged sufficient facts to show that Dr. Barnes

11

was aware of Mulcahy's illness relating to the water contamination during the time period when he was unsuccessfully asking for medical treatment. *See Shaw*, 13 F.3d at 799.

Mulcahy acknowledges that once he was finally brought to the medical unit, he received treatment that included antibiotics. His claim that medical staff told him that they had not treated him earlier because "they were backed up," Am. Compl. at 5, while raising questions about whether medical personnel were previously aware of his condition, does not provide a basis to conclude that Dr. Barnes was so aware. The Eighth Amendment claim against Dr. Barnes will therefore be dismissed.

## C.    State Law Claims

To the extent that the Amended Complaint can be construed as asserting a claim against Dr. Barnes for medical malpractice, any such claim will be dismissed because Mulcahy has not first complied with the requirements for such claims under the Maryland Health Care Malpractice Claims Act. Md. Code Ann., Cts. & Jud. Proc. § 3-2A-04(a)(1)(i). Under Maryland law, Mulcahy may assert such a claim only if has exhausted administrative remedies by first presenting it to the Maryland Health Care Alternative Dispute Resolution Office. *See id.*; *Wilcox v. Orellano*, 115 A.3d 621, 625 (Md. 2015); *see also Rowland v. Patterson*, 882 F.2d 97, 99 (4th Cir. 1989) (recognizing that this requirement applies to medical malpractice claims filed in federal court). Here, there is no basis to conclude that Mulcahy satisfied this requirement. Accordingly, any medical malpractice claim asserted against Dr. Barnes must be dismissed.

12

## CONCLUSION

For the foregoing reasons, the County Defendants' Motion to Dismiss will be GRANTED IN PART and DENIED IN PART in that it will be granted as to the claims against Director Pesterfield, which will be DISMISSED WITHOUT PREJUDICE, and denied as to the claims against Sergeant Oldes. Dr. Barnes's Motion to Dismiss will be granted in that the claims against Dr. Barnes will be DISMISSED WITHOUT PREJUDICE. A separate Order shall issue.

Date:  September 11, 2025

THEODORE D. CHUANG
United States District Judge

13